

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–16–230

| | |
|---|---|
| | **Opinion Delivered:** September 21, 2016 |
| JOHN HELVEY | |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV15-266-3] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | |
| | AFFIRMED |

## BART F. VIRDEN, Judge

The Washington County Circuit Court terminated the parental rights of appellant John Helvey to his daughter, A.H. (DOB: 11-9-2010). Helvey argues that there was insufficient evidence of grounds to support the termination and that the trial court erred in finding that termination was in A.H.'s best interest because there was insufficient proof of potential harm. We affirm.

I.      *Termination of Parental Rights*

An order forever terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the child, including consideration of the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Repl. 2015).

The trial court must also find by clear and convincing evidence that one or more statutory

grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B). Those grounds include

> (vii)(*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.
> . . . .
>
> (ix)(*a*) The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to . . . have subjected any juvenile to aggravated circumstances.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*); (ix)(*a*)(*3*)(*A*).

"Aggravated circumstances" means, among other things, that a determination has

been made by a judge that there is little likelihood that services to the family will result in

successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(ix)(*a*)(*3*)(*B*)(*i*).

II.     *Procedural History*

On March 25, 2015, the Arkansas Department of Human Services (DHS) received

a report that A.H.'s father had been arrested for two counts of delivery of

methamphetamine, possession of drug paraphernalia, and endangering the welfare of a

minor in the second degree.[1] The child was left with her paternal grandmother, Lisa

Marshall. Marshall appeared to be coherent at the time; however, when DHS contacted

Marshall on the telephone, she rambled, and her speech was slurred. DHS administered a

---

[1]The report indicated that Helvey had sold methamphetamine in A.H.'s presence.

drug test, and Marshall tested positive for methamphetamine and THC.[2] DHS placed a seventy-two-hour hold on A.H. and filed a petition for emergency custody and dependency-neglect, which was granted. The trial court subsequently found probable cause to issue the ex parte order, and A.H. was placed in the custody of her maternal grandmother, Tammy Preston.[3] The trial court ordered that there be no contact between A.H. and Marshall.

In a May 22, 2015 order, A.H. was adjudicated dependent-neglected as a result of neglect and parental unfitness. The trial court noted that a protective-services case was first opened on the family in December 2010 due to the parents' drug use. A.H. was permitted to remain in her parents' custody as long as Preston was living in the home. In September 2012, A.H. was placed in foster care due to her parents' continued drug use. Later, custody of the child was given to Preston. In June 2014, A.H. was returned to Helvey's custody and remained with him until his arrest in March 2015 for drug-related offenses.

On May 28, 2015, DHS filed a motion to terminate reunification services on the basis that Helvey had subjected A.H. to aggravated circumstances.[4] A hearing was held on July 10, 2015, to discuss DHS's recommendation and for purposes of permanency planning. In granting DHS's motion, the trial court found that there was little likelihood that services would result in successful reunification because Helvey had not remedied his drug use

---

[2] THC stands for tetrahydrocannabinol, which is the primary ingredient in marijuana.

[3] A.H.'s mother, Stephanie Preston, died in September 2014.

[4] Arkansas Code Annotated section 9–27–365(a)(1)(A) provides that any party can file a motion for no-reunification services at any time.

SLIP OPINION

despite numerous services; he was incarcerated and facing new drug charges; and it was the second time A.H. had been removed from his custody as a result of his drug use. In the permanency-planning order, the trial court noted that the goal was reunification but established a concurrent goal of adoption. The trial court specifically found that DHS had made reasonable efforts to provide Helvey with services but that A.H. could not be placed with him within a time frame consistent with his daughter's developmental needs. The trial court again ordered that there be no contact between A.H. and Marshall.

On July 15, 2015, Helvey pleaded guilty to possession of drug paraphernalia and two counts of delivery of methamphetamine. The prosecutor's "Short Report of Circumstances" indicated that in March 2015, a digital scale, baggies, and a ledger had been found in Helvey's possession and that Helvey had sold methamphetamine to a confidential informant on two occasions. Helvey was sentenced to serve four years in prison followed by a six-year suspended sentence.

On August 3, 2015, DHS filed a petition to terminate Helvey's parental rights. A hearing was held on December 16, 2015. Mark Thordsen, a family service worker at DHS, testified that A.H. was bonded to Preston and doing well in school. He testified that he had not received any proof that Helvey had addressed his history of substance abuse or otherwise complied with the case plan, but he did recall that Helvey had told him that he was in drug court and had resolved his criminal issues. Thordsen opined that Helvey had not made significant, measurable progress in the case. He admitted, however, that he had been assigned to A.H.'s case two weeks prior to the hearing. Thordsen further testified that he

did not believe that there were any services DHS could provide to Helvey at that time in order for A.H. to be returned to his custody.

In conjunction with Thordsen's testimony, DHS offered into evidence an October 16, 2015 report authored by Kerri Adams, the previous family service worker. Adams noted that, while on ADC bond, Helvey was living with his mother and had reported to drug court, participated in AA/NA meetings and drug screens, and completed parenting classes. She further wrote in the report that

> [d]espite the services completed by John within his short parole[,] the Department continues to have concerns that John has continued to use and be involved with illegal substances despite being incarcerated multiple times and having previous open Protective Services cases and a previous Foster Care case with the Department that offered multiple services to remedy the continuing issues involving substance abuse and misuse.

Tammy Preston testified that her daughter Stephanie had died from a drug overdose in 2014. According to Preston, A.H. had lived with her for all but seventeen months of her life and currently calls her "mom." Preston stated that she thought it was in A.H.'s best interest for Helvey's parental rights to be terminated. She further said that she would pursue adoption of A.H. if Helvey's rights were terminated. When asked how she would feel if the court were to instead award her permanent custody, Preston said,

> If I had a crystal ball, and I could look into it and see that [Helvey] was gonna be fine, I would be fine. But knowing that his mom was in drug court two years ago when I had [A.H.] or three years ago and that she still failed her drug test---it's not that I don't have faith in programs and things like that, but it's up to people to make their own choices to change. And I have to make the choices I make every day to take care of a five-year-old and make sure that she's safe and healthy and not around bad things. And it seems that I am the only person in the world to do that for her. And so I don't think that I should want her to be with somebody that I don't know is going to do that every day of his life.

According to Preston, Helvey had been incarcerated three times during A.H.'s life. She said that the first time Helvey went to prison was after both he and Marshall had been arrested for manufacturing methamphetamine and possession of marijuana. After Helvey was released from prison, he lived in her home along with Stephanie and A.H. According to Preston, Helvey was sent back to prison a second time on a parole violation after he had tested positive for drugs. Helvey's third time in prison was in connection with the March 2015 charges.

Helvey testified that he was currently employed full time but that the job was "kind of slow with the winter" and that he was living with his mother. After his arrest in March 2015, he was free on an ADC bond from August 5 to October 5, 2015. During that time, he sought to participate in drug court because he wanted help with his addiction. Helvey stated that he had also tested negative for drugs, attended AA/NA meetings almost daily, and completed parenting classes. He was released from prison on November 25, 2015. Helvey conceded that he had been in prison three times during A.H.'s short life and acknowledged, "I know I can't have my daughter now." With regard to the last open DHS case on the family, Helvey testified that he had received help from DHS and had been provided with services. Helvey said that he had also received drug treatment in prison and had participated in group counseling for drug addiction.

At the conclusion of the hearing, the trial court granted DHS's petition on grounds under section 9–27–341(b)(3)(B)(vii)(*a*) and (ix)(*a*). In determining that termination was in A.H.'s best interest, the trial court considered A.H.'s adoptability and the potential harm that could result from returning her to Helvey's custody.

III.    *Standard of Review*

Termination-of-parental-rights cases are reviewed de novo. *Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, 429 S.W.3d 276. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Id.* The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Id.* Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

IV.    *Discussion*

A.     Grounds

Helvey challenges both grounds on appeal; however, only one ground is necessary to support termination of parental rights. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. In finding that A.H. had been subjected to aggravated circumstances under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*), the trial court determined that there was little likelihood that further services would result in successful reunification with A.H. The trial court considered that Helvey had been provided services by DHS in the past, that he had received drug treatment and counseling in prison, and that, despite

having had A.H. removed from his custody on more than one occasion, Helvey continued to use drugs and was incarcerated multiple times for drug use.

According to Helvey, the only evidence to support a finding of aggravated circumstances was the fact that he had relapsed in the past. He contends that this does not automatically mean he will relapse again. Helvey asserts that he had never before participated in drug court and that he was now confident that he would be able to maintain his sobriety. Helvey argues that the trial court did not even consider the documentary evidence or his testimony regarding his present efforts as shown by the trial court's statements from the bench regarding drug court, which in relevant part were that "it's not like drug court is some voluntary program . . . . You go to drug court because they say you got criminal drug charges and you have a drug problem and if you don't complete it you're gonna be going to prison."

Helvey's sentencing order indicates that entry into and completion of the drug-court program was a condition of Helvey's suspended sentence. In its order terminating parental rights, the trial court set forth evidence of Helvey's efforts, e.g., a drug assessment, multiple negative drug screens, sign-in sheets for AA/NA meetings, certificates showing his completion of twelve hours of parenting classes, and proof of his participation in drug court. The trial court discussed drug court and stated that Helvey was fortunate to be in what it considered "a very good program." The trial court went on to say that "[Helvey's] pretty new in the program. He has, I think his attorney said, another year left to go."

Giving Helvey more time is contrary to the statutory mandate to provide permanency for A.H. The intent of our termination statute is to provide permanency in a

juvenile's life in all circumstances where return to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). Further, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849.

Under these circumstances, we cannot say that the trial court clearly erred in terminating Helvey's parental rights based on aggravated circumstances. Because only one ground was necessary to support termination, we do not address the alternative ground of subsequent factors.

### B. Best Interest

The court shall rely on the record of the parent's compliance in the entire dependency-neglect case and evidence presented at the termination hearing in making its decision whether it is in the juvenile's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341(a)(4)(B). In considering the best interest of the child, there is no requirement that every factor considered be established by clear and convincing evidence; rather, after consideration of all the factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, 385 S.W.3d 285.

Arkansas Code Annotated section 9-27-341(b)(3)(A) provides that the trial court is required to consider the potential harm to the health and safety of a child that might result from continued contact with a parent. The court is not required to find that actual harm

would result or to affirmatively identify a potential harm. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Samuels v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 527, 443 S.W.3d 599.

Helvey argues that there was insufficient evidence to support the finding of potential harm. He maintains that the only evidence of potential harm was through the testimony of Thordsen and Preston. He contends that, given Thordsen's limited knowledge of the case, his testimony was "of no evidentiary value" and that Preston's testimony was "self-serving." This court will defer to the trial court's evaluation of the credibility of the witnesses. *Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). Contrary to Helvey's assertion, we hold that the trial court properly considered evidence of Helvey's past behavior in determining that potential harm could befall A.H. in her father's custody. Past behavior is correctly viewed as a predictor of potential harm that may likely result if a child is returned to the parent's custody. *Dowdy*, *supra*.

Nevertheless, Helvey claims that DHS presented "the bare minimum of evidence" in proving potential harm, which this court has cautioned against. Helvey is referring to a footnote in *Renfro* in which this court suggested that DHS had presented the "bare minimum" evidence in proving adoptability. *Renfro*, 2011 Ark. App. 419, at 20, n.3, 385 S.W.3d 285, 295 n.3. Helvey argues that the trial court relied on his history of drug abuse and drug-related crimes and gave no consideration to the fact that he had sought out and received permission to participate in drug court. There is, however, no indication that the trial court gave no consideration to Helvey's participation in drug court as discussed earlier.

The trial court recognized that completion of the drug-court program was a condition of Helvey's suspended sentence and that whether Helvey could maintain his sobriety was uncertain given that he had another year of drug treatment. Living in continued uncertainty is, itself, potentially harmful to children. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

Helvey further contends that his rights should not have been terminated given that there was a less restrictive alternative available, i.e., permanent custody with Preston. He argues that this negated the compelling need for permanency and that instability was not an issue. Helvey cites *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383, where this court held that the trial court clearly erred in its consideration of adoptability in its best-interest analysis. We said that termination of Lively's rights would not achieve permanency because the children were already in the permanent care and custody of their mother. Here, Helvey does not challenge the adoptability of A.H. on appeal, and adoptability became an issue when A.H.'s mother died. Helvey cannot equate a *parent's* continued custody of a child to A.H.'s placement with her grandmother.

Helvey also cites *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, where this court reversed the trial court's determination that termination of the Cranfords' parental rights was in their child's best interest. This court noted that termination would not provide greater stability for the child because he was in the custody of, and being cared for, by his maternal grandparents. This court stated that the child and his parents had lived with the grandparents before the case had begun and that the child would remain with his grandparents regardless of the result of the termination

proceedings. The *Cranford* case is also distinguishable. In *Cranford*, the child was never placed with strangers, whereas A.H. was in foster care. Also, the grandparents in *Cranford* did not ask that the parents' rights be terminated; whereas here, Preston testified that she thought termination of Helvey's parental rights would be in A.H.'s best interest.

We recently rejected an argument similar to that raised by Helvey in this appeal. In *McElwee v. Arkansas Department of Human Services*, 2016 Ark. App. 214, 489 S.W.3d 704, the father argued that the trial court erred in terminating his parental rights instead of choosing the less restrictive option of permanent custody with the child's paternal aunt. This court noted that a trial court is permitted to set termination and/or adoption as case goals even when a relative is available and requests custody. Arkansas Code Annotated section 9–27–338(c) lists permanency goals in order of preference. The fourth goal is authorizing a plan for adoption with the department's filing a petition for termination of parental rights *unless* the juvenile is being cared for by a relative and the court finds that the relative has made a long-term commitment to the child *and termination of parental rights is not in the best interest of the juvenile.* Ark. Code Ann. § 9-27-338(c)(4)(A) (emphasis added). Permanent custody with a relative is listed after adoption. Ark. Code Ann. § 9-27-338(c)(6).[5] We are therefore not persuaded by Helvey's contention that Preston's custody of A.H. prevented the trial court from terminating his parental rights.

---

[5] While we recognize that there is an ongoing public-policy discussion regarding when and how family placement should or should not be given priority or preference in these cases, as of now, the legislature has not chosen to alter the statutory language cited above. As such, when the proceedings reach the termination stage, adoption is given preference over permanent custody with a relative.

SLIP OPINION

Helvey further claims that the trial court gave no consideration to facts favorable to him, that the trial court had made up its mind from the beginning that he could not benefit from services given his history of drug use, and that termination of his parental rights was punishment for his past mistakes. There is, however, no evidence to support such assertions.

We cannot say that the trial court clearly erred in finding that potential harm could result if A.H. were to be returned to Helvey's custody and that termination of parental rights was thus in A.H.'s best interest.

Affirmed.

ABRAMSON and GRUBER, JJ., agree.

*Tina Bowers Lee*, Ark. Pub. Defender Comm'n, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.