On appeal, McLemore argues that DHS failed to prove the aggravated-circumstances ground. According to McLemore, the trial court erroneously relied on the caseworker's testimony regarding the protective-services case. She points out that the caseworker admitted that no valid case plan had been established in the protective-services case and that McLemore had not signed any documents advising her of DHS's goals or expectations. Further, McLemore maintains that DHS had to prove that appropriate family services *737 were offered in this case, not the protective-services case.
We note that McLemore's noncompliance with the protective-services case was part of her stipulations to the trial court's probable-cause finding and its adjudication of L.S. as dependent-neglected due to parental unfitness. Thus, we agree with the trial court that McLemore's prior noncompliance was relevant to whether there was little likelihood that further family services would result in successful reunification with L.S. In any event, McLemore's noncompliance with the protective-services case was not the only basis on which the trial court could have found that L.S. had been subjected to aggravated circumstances.
Contrary to McLemore's argument, the aggravated-circumstances ground does not require that DHS prove that meaningful services toward reunification were provided. See, e.g. , Willis v. Ark. Dep't of Human Servs. , 2017 Ark. App. 559, 538 S.W.3d 842. Nevertheless, there must be more than a mere prediction or expectation on the part of the trial court that reunification services will not result in successful reunification. Yarborough v. Ark. Dep't of Human Servs. , 96 Ark. App. 247, 240 S.W.3d 626 (2006). The trial court heard testimony at the termination hearing about McLemore's substance-abuse counseling and her having achieved step four in a drug-treatment program while in prison. The trial court also heard testimony that McLemore expected to be released from prison within a month after the termination hearing. Despite having received drug counseling and drug treatment while incarcerated, McLemore testified at the termination hearing that she did not think her drug use had affected her children or her ability to parent those children. Thus, we cannot say that the trial court clearly erred in terminating McLemore's parental rights to L.S. on the aggravated-circumstances ground based on its finding that there was little likelihood that further services would result in successful reunification. We also agree with the trial court that reunification with L.S. could not occur within a reasonable period of time from L.S.'s perspective and that L.S. needs permanency "now-not a year from now."
B. Best Interest
McLemore does not challenge the trial court's adoptability finding. She argues that the trial court's determination that potential harm could result from returning custody of L.S. to her was based on little more than speculation. In determining potential harm, the trial court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. Harbin v. Ark. Dep't of Human Servs. , 2014 Ark. App. 715, 451 S.W.3d 231. The trial court is not required to find that actual harm would result or to affirmatively identify a potential harm. Id. The potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. Id.
McLemore complains that DHS caseworkers did not do their jobs, that DHS rushed to terminate her rights instead of preserving the familial bonds, and that DHS could not use her noncompliance from the protective-services case to bolster the evidence in this case. McLemore also asserts that evidence of her progress in prison, her impending release, and her plans upon release were not properly considered by the trial court and that neither DHS nor the trial court considered the effect that termination of her parental rights would have on L.S. as a sibling.
There is no indication that the trial court failed to consider any evidence or improperly considered any evidence, as discussed above. The trial court found that DHS had *738 made reasonable efforts to provide services and ordered DHS to continue to explore possible placements with a permanent custodian. While McLemore states that DHS should not have sought to terminate her rights while still trying to find a relative placement for L.S., which would have avoided the necessity of terminating her rights, we note that Ark. Code Ann. § 9-27-338(c) lists permanency goals in order of preference and that permanent custody with a relative is listed after adoption. Ark. Code Ann. § 9-27-338(c)(6) ; see also Helvey v. Ark. Dep't of Human Servs. , 2016 Ark. App. 418, 501 S.W.3d 398. Further, McLemore cites no authority for her claim that DHS could not seek to terminate her rights when it did.
Even if McLemore is released from prison when she expects, she would not be ready to take custody of L.S. There was testimony that McLemore had secured a home with relatives and a temporary job, but she has not demonstrated her sobriety. A child's need for permanency and stability may override a parent's request for additional time. See Henderson v. Ark. Dep't of Human Servs. , 2010 Ark. App. 191, at 10, 377 S.W.3d 362, 386 (affirming trial court's determination that termination was in child's best interest when mother's drug rehabilitation was "still a work in progress"). We cannot say that the trial court clearly erred in determining that termination of McLemore's parental rights was in L.S.'s best interest.
Affirmed.
Glover and Brown, JJ., agree.