Cite as 2017 Ark. App. 312

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–17–49

| | |
|---|---|
| CHELSEA EDGAR<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **OPINION DELIVERED:** MAY 17, 2017<br><br>APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 24JV-13-45]<br><br>HONORABLE KENNETH D. COKER, JR., JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Chelsea Edgar appeals the October 26, 2016 order of the Franklin County Circuit Court terminating her parental rights to her minor children, A.E. and A.N. She argues that the trial court erred in granting the termination-of-parental-rights (TPR) petition because appellee Arkansas Department of Human Services (ADHS) failed to present sufficient evidence that TPR was in the children's best interest. Appellant argues that, contrary to the subsequent findings by the trial court at the TPR hearing that she was unlikely and unwilling to comply with the requirements to have custody restored to her, she, in fact, had demonstrated throughout the case her willingness and ability to comply, and her children had been returned to her. We affirm.

### I. *Facts*

Appellant was the victim of domestic violence from her now deceased husband, Bruce Nichols. During a domestic-abuse incident that occurred on October 4, 2013,

appellant's then one-year-old minor child, A.E., received injuries when Nichols placed him on a window sill, and he fell through the window as Nichols fled the scene after appellant called the police. On October 4, 2013, ADHS interviewed appellant, Nichols, and other parties, and put an emergency, seventy-two-hour hold on both A.E. and A.N, based upon threat of harm, cuts, welts, and bruises, as well as inadequate supervision.

ADHS filed a petition for emergency custody and dependency-neglect on October 9, 2013. The supporting affidavit sets forth the factual bases supporting the petition, including that appellant and Nichols had been drinking, had a car wreck, and when they got home, they got into a heated argument that escalated into domestic violence perpetrated by Nichols against appellant. Appellant revealed that while being attacked she defended herself with two knives, and the one-year-old child, A.E., was in the abuser's hands when she defended herself. Nichols acknowledged that the altercation had occurred, that he did have A.E. in his arms at some point in time, and that when appellant called law enforcement he placed the child in the window sill, let him fall into the room, and then fled.

The trial court entered an ex parte order for emergency custody on October 9, 2013, granting ADHS custody of the minor children. A probable-cause hearing was held on October 14, 2013, and an order was entered on October 23, 2013, with an amended probable-cause order being filed on October 25, 2013, wherein the trial court ordered custody of the children to be with ADHS. The parents received reasonable and supervised visitation contingent on having negative drug screens.

Appellant was ordered to comply with existing orders, submit to random drug testing as requested by ADHS, attend and complete parenting classes, attend counseling (individual and couple), submit to drug-and-alcohol assessments and complete recommendations, keep

ADHS advised of her address and phone number, attend domestic-violence classes, and obtain and maintain reliable transportation.

On November 6, 2013, an adjudication order was entered, continuing custody of the children with ADHS and finding that there was threat of harm, inadequate supervision, and physical abuse (cuts, welts, and bruises). The goal was reunification. The children were placed in a provisional foster home with their maternal grandmother, Debbie Edgar, on December 17, 2013.

Several court reports were submitted and review hearings were held during the initial pendency of the case, and a review order was entered on April 23, 2014, wherein the trial court found that the return of custody to appellant was contrary to the welfare of the children and that continued custody in ADHS was in the best interest of, and necessary for the protection, of the children's health and safety. The trial court noted that the parents had complied with the case plan in that they complied with random drug screenings, drug-and-alcohol assessments, and completed residential drug treatment. That order further ordered the parties to continue receiving services including attending and completing parenting classes, obtaining and maintaining stable and appropriate housing and gainful employment, attending counseling as recommended by a counselor or therapist, and attending and completing domestic-violence classes.

On July 15, 2014, a review order was filed of record in which the trial court again found that the return of custody to appellant was contrary to the welfare of the children and that continued custody in ADHS was in the best interest of, and necessary for the protection of, the children's health and safety. The trial court noted that the parents had partially complied with the case plan in that they had completed parenting classes, attended domestic-

violence classes regularly, completed drug-and-alcohol assessments, and maintained stable housing, and that Nichols had maintained stable employment. On August 1, 2014, a court report was filed recommending the children be placed in the parents' home for trial-home placement. In that report, ADHS noted that the parties had completed residential treatment and had also followed up on referrals to other agencies; that visitation was occurring at Debbie Edgar's home on a weekly basis, and that visits were going very well.

A review order was entered on August 13, 2014, wherein the trial court determined that a trial-home placement would begin upon ADHS completing a walk-through of the home and noted that the parties had completed drug treatment, obtained housing and income, and complied with domestic-violence classes. The parents were ordered to continue to comply with previous trial court orders.

On September 25, 2014, a court report was filed recommending that custody be returned to the parents and that a protective-service case be opened. On October 15, 2014, a review order was entered finding that return to the custody of the parents was no longer contrary to the welfare and safety of the children and that placement of the children in the custody of the parents was in their best interest. Custody was returned to the parents, with the trial court also noting that the parents had partially complied with the case plan in that they had completed all domestic-violence classes and all other requirements except counseling, on which they were working.

On January 7, 2015, a court report was filed by ADHS recommending that the children remain in the home and the case be closed. This report also indicated that the parties were living in an appropriate home, had suitable transportation, and had income.

On January 22, 2015, a review order was entered leaving custody with the parents and finding that the parents had completed parenting and domestic-violence classes and were attending both individual and marriage counseling. The review order also indicates that upon receipt of the counselor's recommendation and agreement of the parties, an agreed order might have been entered to close the case.

However, on March 9, 2015, a court report was filed by ADHS still recommending that the children remain in the home, but recommending that intensive family services be initiated after a caseworker observed and had concerns with parenting skills, the condition of the home, and family-role responsibilities. A review order was entered on March 13, 2015, leaving custody with the parents and finding that the parents had partially complied with the case-plan in that they had complied with counseling, but noting that the mother had failed to maintain her home in a clean manner. On May 22, 2015, a court report was filed recommending the children remain in the home of the parents and that ADHS continue to work with the family. On May 27, 2015, a review order was entered continuing custody with the parents as being in the best interest and necessary for the protection of the children, with a case-plan goal for custody to remain with the parents, and with ADHS providing services to achieve that goal. Appellant specifically was ordered to submit to (1) random drug screens as requested by ADHS, (2) attend and complete parenting classes, (3) obtain and maintain stable and appropriate housing, (4) attend counseling, (5) submit to a psychological evaluation and follow any recommendations, (6) submit to intensive family services, and (7) submit to an evaluation by a medical professional to reevaluate her epileptic medication.

SLIP OPINION

The goal and case plan continued, and on October 21, 2015, a permanency-planning order was entered indicating that continuation of custody with the parents was in the best interest of, and necessary for the protection of, the children's health and safety, and the case would continue the goal of support and services with case closure expected to occur within a time frame consistent with the children's developmental needs. That review order further found that

> the parents had complied with the case plan and that they had maintained a safe and appropriate home, started parenting classes, and continued . . . therapy. The mother has not been reported driving again, and her father has stepped up to transport her and the children as needed. Mother has completed her psychological evaluation, which reported she has poor impulse control and low self-esteem. Mother needs to continue therapy to assist her in developing a healthy relationship and to build her self-esteem. The father has continued his employment as a diesel mechanic.

However, on January 5, 2016, a court report was filed indicating that, although the children were currently in the home with the parents and were doing well in school, appellant had tested positive for opiates, and the prescription she provided did not match the drugs for which she tested positive. There was an issue reported by appellant's mother that appellant had not been paying the full amount of rent. Her mother had quit helping her, and appellant had no one to depend on to help her watch the children until Nichols returned home from work. That report also noted appellant's history of seizures and recommended the children be brought back into foster care.

On January 20, 2016, a review order was entered whereby the trial court exercised a hold on the children and returned them to ADHS custody, finding that hold to be in the best interest of, and necessary for the protection of, the children's health and safety. The trial court noted appellant had tested positive for opiates, and there was an issue with the

maternal grandmother as to the continued residence by appellant and the children in a home where appellant and Nichols were not paying their rent.

Although the trial court had previously found that appellant was in compliance and had restored custody to her, in the review order of January 2016, the trial court found that there were continuing environmental-neglect issues that had resurfaced, that the parents were put on "a short leash," and that the trial court would not allow this case to linger much longer than the two years it had been in progress. The parents were given one last chance to correct the situation and prove that they could provide a safe, clean home and conduct themselves in a manner consistent with good parenting. The trial court also ordered that services to the family should include both parents taking new drug-and-alcohol assessments, following all recommendations, cleaning their home and keeping it clean, and allowing home visits. The trial court ordered the parents to submit to all random drug-screen requests and noted that all visitation would be supervised and would continue only on a clean drug test and the parties not appearing under the influence.

On April 6, 2016, ADHS filed a court report requesting the goal change to TPR indicating that the children had been doing well at the Franklin County Learning Center since back in ADHS custody and that appellant had come to ADHS in March 2016 and advised that Nichols had started drinking again and that appellant wanted to tell ADHS before her mother did. On June 22, 2016, ADHS filed a court report requesting a goal change to TPR. In that report the history of the case was outlined including new indications that on January 15, 2016, an ADHS caseworker visited the home and noticed a big improvement in the house. The house was clean, and appellant was praised for having a clean home. But when the caseworker went into A.E.'s bedroom, she found that appellant

had tied a side rail of a crib on top of A.E.'s playpen where A.E. sleeps. The caseworker indicated that she had told appellant time after time not to cage the child. On June 22, 2016, a CASA report was filed indicating that he did not have enough information to make any recommendations at the time but that the two children presented themselves well, showing appropriate social skills and the ability to interact with each other and with adults.

On June 30, 2016, a permanency-planning order was entered, which referenced the June 22, 2016 CASA report previously identified and further found that the father, Nichols, had relapsed, was arrested on alcohol charges on May 29, 2016, and was deceased. The trial court further found that the mother had barely complied with the case plan. The trial court recapped the history of the case, including the incidents that, notwithstanding such, the children had been returned to the custody of the parents, and the trial court made a finding that there was overwhelming evidence that, in the best interest of the children, the plan was to change the goal to adoption. The trial court said appellant's continuing pattern of poor judgment that affected the health and safety of the children could not be ignored.

The TPR petition was filed on September 19, 2016, specifically asserting as grounds for termination of parental rights according to Arkansas Code Annotated section 99-27-341 (b)(3)(B) (Repl. 2015):

> (i)(*a*) That the juveniles have been adjudicated by the Court to be dependent-neglected and have continued out of the custody of the parents for more than twelve (12) months and despite a meaningful effort by the department to rehabilitate the parents and correct the conditions which caused removal, those conditions have not been remedied by the parents.

> (vii)(*a*) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of the parents is contrary to the juveniles' health, safety or welfare and that despite the offer of appropriate family services, the parents have manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate

the parent's circumstances which prevent the placement of the juveniles in the custody of the parents.

(ix)(*a*)(*3*)(*B*)(*i*) The parents have subjected the juveniles to aggravated circumstances in that there is little likelihood that services to the family will result of successful reunification.

Appellant filed her answer on October 4, 2016, and a hearing on the TPR petition was held on October 19, 2016.

On October 26, 2016, a TPR order was entered that included findings that (a) the trial court had adjudicated the children to be dependent–neglected, the children had remained out of custody of the parents for more than (12) months, and despite ADHS efforts, the parents had "failed to remedy any of the parenting issues that caused the removal of the juveniles in this case"; (b) the trial court reported that other factors arose subsequent to the filing of the original petition and that ADHS had "made a meaningful effort to rehabilitate the parents and correct the condition that caused the removal . . . (and) these efforts have been meaningful because they directly addressed the parenting issues that caused the removal . . ."; and (c) appellant had "subjected the juveniles to aggravated circumstances . . . that there [was] little likelihood that services [would] result in successful reunification. . . because appellant [had] failed to comply with the case plan and orders . . . despite (ADHS's) meaningful efforts, reasonable efforts, and offer of appropriate family services throughout the nineteen–month pendency of this case." Appellant filed a timely notice of appeal on November 15, 2016.

II. *Standard of Review and Applicable Law*

Our court recently reiterated the standard of review in TPR cases as follows:

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment

or destruction of the health and well-being of the child. In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile. Additionally, the circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.

Termination-of-parental-rights cases are reviewed de novo. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses.

*Jones v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 125 at 6, __ S.W.3d __, __ (citations omitted).

Termination of parental rights requires clear and convincing evidence that two elements exist. Ark. Code Ann. § 9-27-341(b)(3). First, that TPR is in the child's best interest. *Id.* And second, at least one of nine statutory grounds exist. *Id.* Here the trial court found that these conditions existed, and we hold that a review of the record does not leave a definite and firm conviction that these findings were a mistake.

The juvenile code requires that a best-interest finding be based upon a consideration of at least two factors: (1) the likelihood that, if parental rights are terminated, the children will be adopted; and (2) the potential harm caused by "continuing contact with the parent, parents, or putative parent or parents." Ark. Code Ann. § 9-27-341(b)(3)(A). But it is the overall evidence—not proof of each factor—that must demonstrate that TPR is in the child's best interest. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005).

SLIP OPINION

Under the juvenile code, TPR requires that the circuit court consider the likelihood of adoption. Ark. Code Ann. § 9-27-341(b)(3)(A)(i). This factor, however, does not require that adoptability be proved, by clear and convincing evidence. *Duckery v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 358. There instead must be evidence that addresses the likelihood of adoption. *Thompson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 124.

The juvenile code also requires that, to terminate parental rights, the circuit court must consider potential harm. Ark. Code Ann. § 9-27-341(b)(3)(A)(ii). This factor, however, does not require that a specific potential harm be proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. The potential-harm evidence moreover must be viewed in a forward-looking manner and considered in broad terms. *Samuels v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 527, 443 S.W.3d 599.

Although the juvenile code provides nine different grounds that warrant termination, *see* section 9-27-341(b)(3)(B), in order to terminate parental rights only one ground is needed. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). And on de novo review, the court can affirm the trial court's TPR decision on any ground that was alleged in the petition and proved. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483.

### III. *Discussion*

#### A. Grounds for Termination

Appellant initially argues that although the children had been adjudicated to be dependent-neglected and had been out of her custody for more than twelve months, conditions causing removal had been remedied and custody had been restored to her. She

acknowledges that progress toward, or even completion of, the case plan is not a bar to termination of parental rights. *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, 426 S.W.3d 520. She concedes that what matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for her children; mere compliance with the directives of the court and ADHS is not sufficient if the root cause of the problem was not adequately addressed. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). However, appellant claims that she not only completed the case plan, but did so to such an extent that the trial court restored custody to her.

With respect to the failure-to-remedy ground pursuant to section 9-27-341(b)(3)(B)(i)(*b*), the trial court made two key findings: (1) that A.E., A.N., or both, had been subjected to neglect and (2) that A.E., A.N., or both, had been abused. This neglect and abuse led to A.E. and A.N.'s initial removal. We acknowledge that appellant subsequently was able to have A.E. and A.N. returned to her, but for the very same reasons—neglect and abuse—A.E. and A.N. were again removed from appellant's custody.

We hold that the trial court's conditions-not-remedied finding was not clearly erroneous. *See Jung v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 523, 443 S.W.3d 555 (holding when parent's drug problem led to children's removal and after case began kept using drugs, evidence supported failure-to-remedy finding); *Tuck v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 468, 442 S.W.3d 20 (holding when parent's alcohol problem led to children's removal and eight months after case began was charged with DWI, evidence supported failure-to-remedy finding).

Appellant also argues that there was no basis for the trial court's aggravated-circumstances finding because she remedied the initial circumstances and had shown

likelihood that reunification would be successful. Appellant notes that the basis for the trial court's determination of aggravated circumstances was that "there is little likelihood that services to the family will result in successful reunification . . . because Appellant has failed to comply with the case plan and orders of the court despite the Department's meaningful efforts, reasonable efforts, and offer of appropriate family services throughout the nineteen-month pendency of this case. [Appellant] has failed to complete domestic violence classes." She urges that this judicial conclusion is not supported by the record.

Appellant submits that the trial court had previously found as late as October 14, 2015, that she had successfully completed the case plan, had complied with the plan and orders of the court, and had received meaningful and reasonable efforts to such an extent that, with appropriate family services, she had custody restored to her.

With regard to the "behavior" and purported "lack of bonding" of the children with appellant, she notes three things: first, there was no mention in the record of these purported factors from October 2013 through January 2016, while the minors were either in ADHS care, with their maternal grandmother, or with appellant; second, these factors only arose after the January 2016 removal from appellant; and third, it is speculative, at best, to attribute these factors to anything appellant had done or failed to do inasmuch as these factors were not present while appellant had her children, when appellant visited during their first removal, or during placement with the maternal grandmother. Appellant claims that the forced removal from her is as likely to have caused the post-2016 behavior as any act of commission or omission by her.

Regarding the aggravated-circumstances ground, section 9-27-341(b)(3)(B)(ix) provides that aggravated circumstances exist when the trial court finds that there is little

likelihood that services would result in successful reunification. We hold that the clear and convincing evidence shows that the trial court's aggravated-circumstances finding was not clearly erroneous. Neglect and abuse led to ADHS's long-term involvement with appellant, A.E., and A.N. ADHS's involvement included A.E. and A.N.'s out-of-home placement, totaling approximately nineteen months. After A.E. and A.N.'s initial removal for neglect and abuse, appellant succeeded in regaining their custody. ADHS provided multiple services to keep A.E. and A.N. in appellant's custody, but she lost it because of continued neglect and abuse. Accordingly, we hold that the trial court's little-likelihood finding was not clearly erroneous. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006) (affirming little-likelihood finding when parent was given multiple opportunities over a long period to properly care for child yet failed to).

## B.  Best-Interest Analysis

Regarding the best interest analysis, specifically as to adoptability, ADHS-assigned family service worker, Amy Vaughn, opined that if appellant's parental rights were terminated, the likelihood of A.E. and A.N.'s adoption was "very high." Additionally, ADHS-assigned adoption specialist, Raelyn Shook, agreed that the probability of adoption was "very high." Under our current caselaw, this provides sufficient evidence to support the circuit court's adoptability finding. *See Threadgill v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 642, 386 S.W.3d 543; *Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004).

Regarding the potential-harm factor, our review indicates that the trial court thoroughly reviewed and adjudicated the evidence related to this factor throughout the

extended pendency of this case. Despite appellant's regaining custody of the children for a period of time, by January 2016, the trial court found upon review that, since the last hearing, there had been a radical change, including illegal drug use, potential loss of housing, and lack of proper supervision. At that time, the trial court ordered A.E. and A.N. returned to ADHS's custody. Within a few months, the trial court ordered the case goal changed to adoption and authorized ADHS to pursue the termination of appellant's parental rights.

Testimony at the hearing on the TPR petition from caseworkers Amy Vaughn and LaToya Maxwell, as well as CASA volunteer Brian Lachowski, supports the trial court's potential-harm finding. Appellant was given an opportunity to show she could successfully parent—after A.E. and A.N. had been in an eleven-month out-of-home placement—had custody been returned to her. ADHS, in an effort to maintain A.E. and A.N. in the family home, provided multiple services, but they were unsuccessful. Appellant (1) tested positive for a controlled substance for which she had no prescription; (2) failed to pay her rent; (3) failed to provide A.E. and A.N. needed supervision; (4) failed to keep her house clean; (5) obtained drugs for Nichols; and (6) burned A.E. Stated differently, A.E., A.N., or both, again suffered neglect,[1] abuse, or both. Appellant also failed to obtain and maintain her own stable and appropriate home, which the trial court had ordered her to do. She instead lived with her mother, Debbie Edgar. The failure to provide a stable, proper home is considered neglect. Ark. Code Ann. § 9-27-303(36)(A)(ii). Further, it shows evidence of potential harm. *See Latham v. Ark. Dep't of Human Servs.*, 99 Ark. App. 25, 256 S.W.3d 543 (2007)

---

[1]Neglect includes failure to provide shelter and proper environment and inadequate supervision. Ark. Code Ann. §§ 9-27-303(36)(A)(ii), 9-27-303(36)(A)(iv), 9-27-303(36)(A)(vii), 9-27-303(36)(A)(viii).

(affirming termination decision when parent was unable to provide child with "most basic need—a stable home").

Appellant throughout this case exhibited poor judgment, as evidenced by the examples previously set forth. Past behavior is correctly viewed as a predictor of potential harm. *See Helvey v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 418, 501 S.W.3d 398. The foregoing raises great concerns about appellant's ability to satisfy A.E. and A.N.'s moral, intellectual, and physical developmental needs. Accordingly, we hold that the trial court's finding that continued contact with appellant would cause A.E. and A.N. to suffer potential harm does not leave a definite and firm conviction that a mistake was made.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Law Office of Joel W. Price*, by: *Joel W. Price*, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.