# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-16-1127

TARA LYNN WALLACE

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILD

APPELLEES

Opinion Delivered: June 7, 2017

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
EIGHTH DIVISION
[NO. 60JV-15-1238]

HONORABLE WILEY A.
BRANTON, JR., JUDGE

AFFIRMED

## MIKE MURPHY, Judge

Appellant Tara Wallace appeals the Pulaski County Circuit Court order terminating her parental rights to her minor child, D.W. She argues that the State failed to present sufficient evidence supporting the circuit court's order terminating her parental rights.[1] We affirm.

The Arkansas Department of Human Services (DHS) exercised emergency custody over then two-month-old D.W. on September 22, 2015, upon notice of domestic violence that occurred in the home. On September 19, 2015, police officers responded to a call, where they discovered that Wallace had broken her apartment window to get someone's attention because D.W.'s father had slapped her while she was holding D.W. The officers noted numerous drugs and paraphernalia around the apartment and

---

[1]D.W.'s father's parental rights were also terminated as part of the order, but he did not appeal.

confiscated needles and spoons with drug residue. Wallace stated that she had a history with heroin, but she claimed that she was not using drugs at that time. A drug test revealed otherwise when she tested positive for amphetamine, methamphetamine, benzodiazepine, and THC. D.W. was removed from Wallace's custody due to her inability to supervise, protect, and care for D.W. given Wallace's substance abuse.

On November 17, 2015, D.W. was adjudicated dependent-neglected based on the finding that D.W.'s parents subjected him to neglect and parental unfitness. The circuit court also found that the child had been subjected to "aggravated circumstances" as defined in the Arkansas Juvenile Code because it was unlikely that services to the family would result in successful reunification within a reasonable period of time.

Seven months into the case, DHS filed its petition to terminate parental rights on April 22, 2016, and the goal of the case was changed to adoption. In June 2016, Wallace hired private counsel who sought a continuance of the termination hearing. As a result, the circuit court converted that hearing to a second permanency-planning hearing and took testimony. The circuit court then set the case for a termination hearing, and DHS filed an amended petition for termination of parental rights. The petition alleged three statutory grounds against Wallace—twelve months out of the home of the custodial parent, subsequent factors, and aggravated circumstances—and that the termination was in D.W.'s best interest. The circuit court held a termination hearing on September 30, 2016.

At the hearing, Wallace's continued drug-abuse and her mental–health issues[2] were the primary focus. Wallace testified that she had not completed inpatient substance-abuse treatment or followed the recommendation in the psychological evaluation. She admitted that she had not maintained a stable home as she had lived in five different locations over the course of the case. She confessed that the last time she used methamphetamine and marijuana was as recently as June 2, 2016. She passed a drug test five days later, but admitted it was because she had drunk a large amount of green tea to overcome the drug test. She explained that she had attempted rehab three times for substance abuse but had not yet completed a program. Wallace testified that, at the time of the hearing, she was stable on her medications. She stated that she suffers from memory loss due to a previous drug overdose. She recently moved to Rison, Arkansas, to be closer to her nephew.

Dr. George DeRoeck, clinical psychologist, testified as an expert witness. He had performed a psychological evaluation on Wallace. At the time of the evaluation, Wallace indicated to Dr. DeRoeck that she was not stable in her moods and that "they were out of control;" she also admitted to drug use. Dr. DeRoeck identified Wallace as having a "dual–diagnosis issue" composed of bipolar disorder and substance abuse. He explained that some drug-treatment programs insist that the patient not be on medication when they are in treatment; he said "If she was on medication and stable and still failed the substance-abuse treatment, that would indicate that we're looking at possibly that she may not be able to independently parent at all." He said an individual needs to be on a therapeutic dose of the medication that he or she can tolerate. However, he had not evaluated her

---

[2]Wallace was diagnosed with bipolar disorder, obsessive-compulsive disorder, and psychosis.

since January 2016, so he was unaware if she was stable on her medications at the time. Arkansas Cares, the first treatment facility Wallace attended, is a dual-diagnosis facility, but she was asked to leave, and Dr. DeRoeck was not sure if Wallace had been provided the dual-purpose treatment. He also explained drug use could render her medications ineffective. According to his testimony, her mental illness is a chronic condition that will be with her for the rest of her life. He explained that, given that she is on disability for her mental diagnosis, she would likely have difficulty responding effectively to any future treatment.

Harrison Williams, Wallace's social worker, discussed conducting three months of therapy with her. He explained that he thought Wallace had the ability to raise her child, but she had to demonstrate that she was done with drugs and alcohol, which she had failed to do. He illustrated this point when he testified that she was supposed to graduate from Recovery Centers of Arkansas, a drug-rehab facility, but relapsed the night before her graduation from the program.

Willie Baker, Wallace's assigned caseworker, further testified to the three failed attempts at drug treatment. He explained that as recently as August 2016, Wallace could not pass a drug test, and that while drug tests go back ninety days and could have overlapped with the previous drug test, the August test indicated a new drug—cocaine— that did not show up on the previous test. Wallace never got a sponsor even though she was asked to do so, and he could not foresee any services that could have been offered that had not been offered that might have reunited the child with her. He testified that an

intensive parenting class would not help her because she continued to use drugs and to be unstable.

The circuit court terminated Wallace's parental rights, finding that doing so was in D.W.'s best interest. In its written order, the court specifically found that

> [the mother] has a long history of mental health issues which will be with her for the rest of her life. The mother has not rid herself of her drug problem. The court continues to find that the mother is not credible and that she intentionally misrepresents material facts concerning her situation. The mother admitted that she drank green tea in order to avoid having a positive drug screen. The mother has made no material progress in this case and remains an unfit to [sic] parent this child. . . . Giving the [mother] 90 more days would not make a significance [sic] difference, nor would giving [her] six months. The mother lacks credibility. The court accepts that perhaps she has some memory problems, but allowing for memory problems, the mother still is not credible.

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, at 4–5, 456 S.W.3d 383, 386. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

The termination-of-parental-rights analysis is twofold; it requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. The first step requires proof of one or more of the nine enumerated statutory grounds for

termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Repl. 2015). The best-interest determination must consider the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). The court, however, does not have to determine that every factor considered be established by clear and convincing evidence. *Spencer v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 96, at 5–6, 426 S.W.3d 494, 498. Instead, after considering all the factors, the evidence must be clear and convincing that the termination is in the best interest of the child. *Id.*

Because Wallace has not challenged the court's decision as to the grounds for termination, we need not address those findings. Rather, the only issue before this court is whether there was sufficient evidence that termination was in D.W.'s best interest. Wallace asserts that the circuit court based its decision to terminate, in large part, on its determination that she would never achieve minimum stability to properly parent because of her mental illness. She seeks reversal of the termination order to be given additional time to demonstrate that therapeutic levels of medication would allow her to parent independently.

In determining the best interest of the children, the court considers factors such as the likelihood of adoption and the potential harm to the health and safety of the child if subjected to continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii) (Repl. 2015). The harm referred to in the statute is "potential" harm; the circuit court is not required to find that actual harm will result or to affirmatively identify a potential harm. *Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, at 5, 471 S.W.3d 251,

255. Moreover, evidence on this factor must be viewed in a forward-looking manner and considered in broad terms. *Id.* In determining potential harm, the court may consider past behavior as a predictor of potential harm that may likely result if the child were returned to the parent's care and custody. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, at 13, 314 S.W.3d 722, 729.

Here, Wallace does not challenge the finding that D.W. is adoptable, nor does she dispute that potential harm existed. Instead, Wallace argues that she was not provided with appropriate services to address her mental-health issues and that she needs more time to reach a point at which she will be stable enough to parent her child. However, as the circuit court noted, "[T]here remains a substantial question as to whether she has the motivation to quit using drugs." Considering her past behavior, allowing Wallace more time would likely not be beneficial. At the time of the termination hearing, Wallace's situation had barely changed. She exhibited a lack of initiative in complying with the case plan because she never obtained a sponsor, she tested positive for cocaine a month prior to the hearing, and she candidly admitted drinking green tea in an effort to defeat drug screens. Notably, throughout the case, Wallace failed to appeal from any of the circuit court's previous reasonable-efforts findings. Her lack of progress does not warrant additional time for improvement.

The intent of our termination statute is to provide permanency in minor children's lives in circumstances where returning the children to the family home is contrary to their health, safety, or welfare, and where the evidence demonstrates that the return cannot be accomplished in a reasonable period of time as viewed from the children's perspective.

*Chaffin*, 2015 Ark. App. at 7, 471 S.W.3d at 256. The child's need for permanency and stability may override the parent's request for additional time to improve the parent's circumstances. *Id.* Parental rights will not be enforced to the detriment of the health and well-being of the child. *Christian-Holderfield v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 534, at 7–8, 378 S.W.3d 916, 920.

This court is sympathetic to mental illness and the challenges of receiving the proper drug treatment at a dual-diagnosis facility, but in this case, we cannot say more time would have been beneficial and that a mistake has been made by the circuit court. D.W. has been in foster care for twelve of his fifteen months of life; his need for permanency overrides Wallace's need for more time.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.