

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-17-282

| | |
|---|---|
| TAMMIE LEE CURTIS | Opinion Delivered:  September 20, 2017 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | [NO. 72JV-15-745] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE STACEY ZIMMERMAN, JUDGE |
| APPELLEES | AFFIRMED |

## DAVID M. GLOVER, Judge

Tammie Curtis appeals the Washington County Circuit Court's January 13, 2017 order terminating her parental rights to her son, Q.C., born October 18, 2013.[1]  She argues the circuit court erred because the Arkansas Department of Human Services (DHS) failed to prove, by clear and convincing evidence, grounds for termination or that termination was in Q.C.'s best interest.  We affirm.

On September 9, 2015, DHS took a seventy-two-hour hold on Q.C. due to Curtis's arrest on several drug-related charges and a charge of endangering the welfare of a minor. On September 14, DHS filed a petition for emergency custody and dependency-neglect; an ex parte order of custody was granted the same day.  The affidavit attached to DHS's petition indicated Curtis had left Q.C. with a man named Ingram Bell, who failed to properly

---

[1]Q.C.'s father is unknown.

supervise Q.C., leaving him in a dirty high chair while Bell slept upstairs. There was also evidence Curtis and Q.C. were present in the house during drug deals; although the drugs and drug paraphernalia had been confiscated at the time of Curtis's arrest, it was reported that both the drugs and drug paraphernalia had been located within Q.C.'s reach.

On September 18, a probable-cause order was entered. Curtis was ordered to contact her caseworker once a week, attend individual counseling, refrain from using illegal drugs and alcohol, undergo a drug-and-alcohol assessment, submit to random drug screens, complete parenting classes, obtain and maintain stable housing and employment, demonstrate the ability to keep Q.C. safe from harm, follow the case plan, and resolve all criminal charges against her. A hair-follicle test was ordered to be performed on Q.C.

In an order filed November 15, 2015, Q.C. was adjudicated dependent-neglected. This order provided that Q.C.'s hair-follicle test was positive for methamphetamine and amphetamines; it also continued the directives set forth for Curtis in the probable-cause order.

A review order, filed March 11, 2016, stated Jacob Riles, identified as Curtis's fiancé, was present for that hearing. The circuit court found Curtis did not yet have stable housing and had not completed parenting classes; however, she had made sufficient progress to warrant expanded visitation and had complied with most of the court's orders and the case plan. The circuit court ordered Curtis, among other things, to continue individual counseling; submit to intensive outpatient substance-abuse counseling as her drug-and-alcohol assessment recommended; refrain from the use of illegal drugs and alcohol; submit to random drug-and-alcohol screens at least three times a month; complete twelve hours of

parenting classes by July 1, 2016; obtain and maintain stable housing and employment; follow the case plan; demonstrate her ability to protect Q.C. and keep him safe from harm; and attend AA/NA/Celebrate Recovery meetings twice a week and provide proof to her caseworker. The circuit court further ordered Curtis and Riles to submit to drug screens that day.

In a permanency-planning order filed August 24, 2016, the circuit court found Curtis was not fully complying with the case plan and orders of the court, was not making significant measurable progress toward achieving the goals established in the case plan, and was not diligently working toward reunification; the case goal was changed from reunification to termination of parental rights and authorization of a plan for adoption. While finding Curtis had complied with some court orders and parts of the case plan, the circuit court found she had not obtained and maintained stable and safe housing, having had six different housing situations since the inception of the case; she had maintained employment but had changed jobs since the last hearing; she had not demonstrated an ability to keep Q.C. safe from harm; she had not submitted to all drug screens as ordered, having missed eight drug screens since the last hearing and having failed to submit to any drug screens in June 2016; and she had not demonstrated she could safely and properly parent Q.C., despite having participated in parenting classes and counseling. The circuit court further noted inappropriate behavior with respect to Curtis's fiancé, Jacob Riles, finding that Curtis had fabricated a story about Riles attempting suicide to get his family's attention and that Riles was not a stable and fit father figure for Q.C., having referred to Q.C. as "n★★★a" on Facebook, and having posted photographs of alcohol and references to a "party"

lifestyle on Facebook, which was not a proper influence for Curtis. Faced with these findings, Curtis stated to the court she intended to remain with Riles and marry him. Curtis was again ordered, among other things, to submit to random alcohol-and-drug screens at DHS direction at least three times a month; obtain and maintain safe and stable housing and stable employment; and attend AA/NA/Celebrate Recovery meetings twice a week and provide proof of such to her caseworker.

On September 26, 2016, DHS filed a petition to terminate Curtis's parental rights. In addition to its assertion that termination of Curtis's parental rights was in Q.C.'s best interest, DHS relied on two grounds for termination in its petition: (1) Q.C. had been adjudicated dependent-neglected and had continued out of Curtis's custody for twelve months and despite a meaningful effort by DHS to rehabilitate Curtis and correct the conditions that caused removal, the conditions had not been remedied (Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015)); and (2) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate placement of Q.C. in Curtis's custody is contrary to his health, safety, or welfare and that despite the offer of appropriate family services, Curtis had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevented placement of Q.C. with her (Ark. Code Ann. § 9-27-341(b)(3)(B)((vii)(*a*)). After a hearing on the petition, the circuit court terminated Curtis's parental rights on both grounds in an order dated January 13, 2017.

At the termination hearing, held December 16, 2016, family-service worker supervisor Lori Johnson (filling in for assigned caseworker Rachel Reader), testified that

while Curtis was in partial compliance with the case plan, the root concerns of why Q.C. had come into DHS care had not been remedied. Specifically, Johnson's concerns were that Curtis had not submitted to random drug screens three times a month as ordered by the court. This was troubling to Johnson because one reason Q.C. came into care was due to Curtis's arrest on drug charges; Johnson did not believe Curtis had demonstrated the ability to protect Q.C. and keep him safe from harm; Curtis had a continued relationship with Jacob Riles despite the court's concern that he was not an appropriate person to be around Q.C.; Curtis failed to provide proof of full-time stable employment; and Curtis failed to provide proof she was participating in AA or NA or Celebrate Recovery meetings. Johnson testified Q.C. had no medical or behavioral issues that would preclude him from being adopted. She further stated the most important thing was for Q.C. to know he has a stable home and caregivers who can protect him and keep him safe, and she did not believe he would have these things if returned to Curtis's custody. On cross-examination, Johnson acknowledged Curtis had been in her current home for six months, and Ms. Reader had no concerns about the physical environment of the home. However, Johnson testified there were ongoing concerns about Curtis's relationship with Jacob Riles; Curtis's failure to provide proof to DHS (other than her own statement) that she had gone from a temporary work position to a permanent one; and the fact that the last drug screen she had taken was on October 21, even though the drug screens she did submit to had been negative.

Tracy Curtis, Q.C.'s provisional foster parent and Curtis's brother, testified Q.C. was doing well in his home. He said that if Curtis's parental rights were terminated, he and his wife wanted to adopt Q.C.

SLIP OPINION

Curtis testified. She agreed she had not submitted to all of her required drug screens. She explained that she was on probation at work since she had become full time on November 3, 2016, and could not leave work for drug screens. Curtis also stated that while she was on felony probation for four more years, she had to report to her probation officer only every three months. She admitted to still being in a relationship with Riles, because a person could not help who they loved. According to Curtis, she loved Q.C. too, and when asked why she chose to stay with Riles over having Q.C. returned to her, she indicated she would rather have them both. Even though Curtis was aware the circuit court had concerns about Riles, she stated that Riles had done "everything" he was supposed to do. She testified Riles had even taken drug tests, but she did not have his test results with her. Curtis testified she had to take drug screens for her probation, and the last one (which she thought was taken in June) had been negative. Curtis admitted she went to only two NA/AA meetings. She said she could not go to those meetings and say she had an issue when she did not.

In terminating Curtis's parental rights, the circuit court stated it had made it very clear to Curtis as to why it considered Riles to be an inappropriate father figure for Q.C.—the objectionable posts on Facebook in reference to Q.C., the fact he had a prior positive drug test, and the story Curtis fabricated about Riles attempting suicide—and even though Curtis had been told by the circuit court that Riles was inappropriate, Curtis remained in a relationship with him. The circuit court found that Curtis's choices did not provide a safe home for Q.C., and Curtis had failed to put Q.C. first in her life. The circuit court stated that even though Curtis had "checked off" some of the case-plan boxes, she had not

demonstrated she could safely and properly care for Q.C. and not place him in harm's way. The court further took issue with Curtis's failure to submit to drug screens as ordered and found Curtis had failed to prove she was not still using illegal drugs.

*Sufficiency of Evidence*

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the children. *Norton v. Arkansas Dep't of Human Servs.*, 2017 Ark. App. 285. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood the juveniles will be adopted and of the potential harm caused by returning custody of the children to the parent. *Id.* Each of these requires proof by clear and convincing evidence, which is the degree of proof that will produce in the finder of fact a firm conviction regarding the allegation sought to be established. *Id.*

Appellate review of termination-of-parental-rights cases is de novo, and our inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Wallace v. Arkansas Dep't of Human Servs.*, 2017 Ark. App. 376, ___ S.W.3d ___. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, a high degree of deference is given to the circuit court, as it is in a far superior position to observe the parties before it and to judge the credibility of witnesses. *Id.*

*Grounds for Termination*

The circuit court found two statutory grounds for termination—"twelve month/failure to remedy" and "subsequent factors." Curtis contends DHS failed to prove either of the grounds. Proof of only one statutory ground is sufficient to terminate parental rights. *Barris v. Arkansas Dep't of Human Servs.*, 2017 Ark. App. 380. We hold that DHS proved the "subsequent factors" ground by clear and convincing evidence. Curtis concedes the circuit court was understandably concerned about her being free from drugs and a drug lifestyle, as her arrest for possession of various drugs and drug paraphernalia, as well as placing Q.C. in a house where drug deals were taking place, were the primary reasons Q.C. was removed in the first place. However, she takes issue with the circuit court's finding that her failure to submit to the number of drug tests ordered by the court was a basis to support termination of her parental rights, as she explained she could not leave her job to take the drug tests because she was in her probationary period, and because the drug screens she had taken were consistently negative. Curtis also takes issue with the finding that her home was inappropriate due to her relationship with Jacob Riles, arguing that the concerns about comments about a "party" lifestyle, pictures of alcohol, and his racial references to Q.C. on social media were not placed in context, specifically arguing that it made no difference that Jacob used the terminology he did to describe Q.C., as that term is "often used as a term of endearment within certain American cultures, and indicates solidarity or affection, similar to the usage of the words dude, homeboy and bro." Curtis also contends DHS did not want to give her credit for obtaining full-time employment because she had not provided proof of such to her caseworker.

Progress toward, or even completion of, the case plan is not a bar to termination of parental rights. *Edgar v. Arkansas Dep't of Human Servs.*, 2017 Ark. App. 312, 522 S.W.3d 127. What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for her child; mere compliance with the directives of the court and DHS is not sufficient if the root cause of the problem was not adequately addressed. *Id.*

Here, Curtis did not complete the case plan. By her own admission, she failed to submit to the number of drug tests required by the circuit court; she resolves this concern by asserting that the drug tests she did submit to were negative and that she could not leave her job for the drug tests due to her probationary status. While she testified she was now working full time, she never provided proof of full-time employment to her caseworker as directed by the circuit court. Additionally, she admitted she stopped attending NA/AA after two meetings, despite being ordered to attend two meetings per week; her reason was she did not believe she had a drug issue. Clearly, Curtis completed only those parts of the case plan she deemed to be necessary. A parent's failure to comply with court orders can serve as a "subsequent factor" upon which termination can be based. *Miller v. Arkansas Dep't of Human Servs.*, 2017 Ark. App. 396, ___ S.W.3d___.

Additionally, the circuit court made it clear it did not consider Riles an appropriate person to parent Q.C.; nevertheless, Curtis chose to continue that relationship, even stating at the termination hearing that she wanted both Q.C. and Riles in her life. Furthermore, the circuit court made clear that it believed Riles's comment about Q.C. on Facebook was improper, an inference it could draw as the fact-finder. The circuit court was also concerned

about the fake suicide-attempt story concocted by Riles and Curtis to get his family's attention, which it also considered to be highly inappropriate behavior. The fact Curtis remained in a relationship with Riles, after being specifically informed by the circuit court of its concerns about Riles, indicates that Curtis continued to make decisions she perceived were in her best interest, not Q.C.'s, reinforcing the circuit court's legitimate concerns that Curtis was not capable of properly caring for Q.C. and placing his interests before hers.

We are not left with a definite and firm conviction the circuit court erred in finding DHS proved the "subsequent factors" ground. Because proof of one statutory ground is sufficient to demonstrate parental unfitness, it is unnecessary to address Curtis's challenge to the second statutory ground relied on by the circuit court for termination.

*Best Interest*

As set forth above, in making a "best interest" determination, there are two factors the circuit court is required to consider: (1) the likelihood the child will be adopted and (2) the potential harm to the child if custody is returned to the parent. Curtis does not challenge the adoptability aspect of the best-interest analysis. Regarding potential harm, she reiterates the arguments made in support of reversing the finding that statutory grounds had been proved. The same evidence that supports the "subsequent factors" ground also supports the potential-harm prong of the circuit court's best-interest finding. The circuit court was not required to find that actual harm would occur if the child was returned to the parent, nor was it required to affirmatively identify a potential harm. *Miller, supra.* Evidence regarding potential harm must be viewed in a forward-looking manner and considered in broad terms; past behavior may be considered as a predictor of potential harm that may likely result if the

child were returned to the parent's care and custody. *Wallace, supra.* Curtis failed to follow the court's orders regarding proof that she continued to remain drug free—one of the issues that brought Q.C. into DHS custody in the first place. Furthermore, she continued her relationship with Riles even after the trial court found he was an inappropriate person to be in Q.C.'s life, asserting she wanted both Riles and Q.C. in her life. We find no clear error in the circuit court's determination it was in Q.C.'s best interest for Curtis's parental rights to be terminated.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Mary Goff*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.