N. MARK KLAPPENBACH, Judge
Appellant Adrianne Otis appeals the June 13, 2017 order of the Pulaski County Circuit Court that terminated her parental rights to her son, CO, who was born in August 2012.[1] Appellant argues on appeal that the trial court's finding that it was in her child's best interest to terminate her parental rights is not supported by clear and convincing evidence. Thus, appellant argues, the trial court's termination order must be reversed. We affirm.
We review termination-of-parental-rights cases de novo. Mitchell v. Ark. Dep't of Human Servs. , 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2015); Dunn v. Ark. Dep't of Human Servs. , 2016 Ark. App. 34, 480 S.W.3d 186. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Anderson v. Douglas , 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Yarborough v. Ark. Dep't of Human Servs. , 96 Ark. App. 247, 240 S.W.3d 626 (2006). Credibility determinations are left to the fact-finder. Henson v. Ark. Dep't of Human Servs. , 2014 Ark. App. 225, 434 S.W.3d 371. In resolving the clearly-erroneous question, a high degree of deference is given to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. Wallace v. Ark. Dep't of Human Servs. , 2017 Ark. App. 376, 524 S.W.3d 439.
Appellant does not challenge the trial court's finding of statutory grounds. Her argument is focused solely on the best-interest finding. The best-interest finding must be based on a consideration of two factors: (1) the likelihood that if parental rights are terminated, the juvenile will be adopted and (2) the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Adoptability is not an essential element but is rather a factor *873 that the trial court must consider. Singleton v. Ark.Dep't of Human Servs. , 2015 Ark. App. 455, 468 S.W.3d 809. A trial court is not required to find that actual harm would result or to affirmatively identify a potential harm; rather, potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. Vail v. Ark. Dep't of Human Servs. , 2016 Ark. App. 150, 486 S.W.3d 229 ; Caldwell v. Ark. Dep't of Human Servs. , 2016 Ark. App. 144, 484 S.W.3d 719. A parent's past behavior is often a good indicator of future behavior. Stephens v. Ark. Dep't of Human Servs. , 2013 Ark. App. 249, 427 S.W.3d 160. It is the "best interest" finding that must be supported by clear and convincing evidence after consideration of the foregoing factors. Vail , supra.
With these legal principles in mind, we examine the evidence presented to the trial court. The Arkansas Department of Human Services (DHS) sought and was granted emergency custody of almost-four-year-old CO in August 2016 after investigating an allegation that Otis was inadequately supervising him because of her drug use. Two weeks later, the trial court found that probable cause existed to support the child's removal from Otis and that he should remain in DHS custody.
At the adjudication hearing in September 2016, Otis stipulated to a finding that the child was dependent-neglected. The trial court also found at the adjudication hearing that there was clear and convincing evidence that Otis had subjected CO to aggravated circumstances in that it was unlikely that services to the family would result in successful reunification within a reasonable period of time as measured from the child's perspective. The trial court listed several of Otis's positive drug-test results and what appeared to be attempts to alter some of the specimens she had provided. The trial court noted her "extensive mental health history," with diagnoses of an unspecified schizophrenia /psychotic disorder and an alcohol-use disorder. Otis's mental-health records indicated that she heard voices on a daily basis telling her to do bad things; that she had homicidal thoughts and aggression; that she was paranoid and had hallucinations that were worse at night; and that she was previously housed in prison in a special-populations unit due to her depressive symptoms. The trial court found that she was an unfit parent "and there is a substantial question" whether she could ever be made a fit parent. Otis was married to CO's legal father, who had a criminal history and who Otis had accused of being physically abusive. The trial court set the initial goal of reunification and ordered services to be provided to both parents. The trial court also made the finding that in this case it did not have to permit a full year of services to be given, if it determined that sufficient progress was not being made. In addition to counseling, therapy, parenting classes, and supervised visitation, Otis was ordered to attend an anger-management class. Otis did not appeal the adjudication order.
In January 2017, a permanency-planning hearing was conducted. The trial court found Otis not to be credible. Otis was partially compliant with the case plan, but she blamed DHS for her failures in getting to appointments. The trial court recited that Otis had been arrested for public intoxication in mid-October 2016 and had failed to comply with drug screening. The trial court listed several drug tests wherein the sample lacked the appropriate temperature or Otis claimed the inability to produce a specimen. The trial court found that Otis was "not minimally fit to parent any child," and it authorized the filing of a petition to terminate her parental rights.
*874 The trial court found that CO's legal father (Christopher Otis, Sr., who did not appear at this hearing) was excluded by DNA testing as CO's biological father. It ordered DHS to consider whether there were any potential relatives who might be proper placements for CO. Services were continued, including the provision of transportation. Otis was ordered to attend inpatient drug treatment, submit to drug testing, and attend therapy.
In April 2017, DHS filed a petition to terminate parental rights alleging two statutory grounds found in Arkansas Code Annotated section 9-27-341(b)(3)(B), the subsequent-other-factors-arising ground, and the aggravated-circumstances ground. Otis's continued lack of compliance was detailed in this petition.
The termination hearing was conducted in May 2017. Otis appeared, but Christopher Otis, Sr., did not. The DHS caseworker testified that DHS had referred Otis for inpatient drug treatment, which was available, but Otis did not attend and instead went to some outpatient meetings. Otis had been referred for parenting classes but did not show up. The caseworker recited the various drug screens and the positive results obtained, opining that Otis had not remedied her drug issues. The caseworker stated that a home study showed her home not to be an appropriate placement because it lacked furniture and had ongoing construction; the home had functioning water and lights but not gas. The caseworker further testified about Otis's mental-health problems, which was the reason she received disability income, and to the fact that Otis failed to attend therapy appointments. CO was noted to have some behavioral problems and developmental delays, but the caseworker thought he was adoptable because he was only four years old and was making progress on his issues.
Terri Rese, Otis's cousin by marriage, testified that she had been involved in CO's life and that he spent a lot of time in her home. She wanted a home study to be conducted on her home. Rese agreed that Otis used drugs and had mental problems; she (Rese) kept CO to protect him when it was necessary. Rese stated that around the time of the adjudication, Otis was angry and did not want her visiting or having CO.
Otis testified that she had paranoid schizophrenia with hallucinations, but she took medications. She agreed that her drug of choice was PCP, having used it about two weeks before the termination hearing. She acknowledged that she needed to stay off drugs but said she was working on it; she testified that she did drugs because she missed CO so much. She said that she had gotten furniture for her apartment. She stated that although the apartment had water and lights, there was no gas. Otis loved her son and wanted him to come home, but if not with her, then she wanted him placed with family members (her cousin or grandmother). She said she just needed a little more time because she had realized how important he was to her and she was making progress.
At the conclusion of the evidence, DHS and the child's attorney ad litem argued that termination of her parental rights was the proper outcome, given her mental-health problems, drug problems, lack of compliance, and lack of proper housing. Otis's attorney argued that she should be given a little more time.
The trial court dismissed Mr. Otis from the proceedings and found that both statutory grounds had been proved against Otis by clear and convincing evidence. The trial court recounted the history of this case, Otis's many positive drug-test results *875 along the way,[2] and the psychological evaluation to which she had finally submitted. During the evaluation, Otis reported that she could not read or write, and she admitted to extensive drug use, including use just two days before the evaluation. The evaluator thought that it was possible she was intoxicated at the evaluation. She was deemed to have a significant functional impairment, hindering her ability to perform the ordinary demands of daily life or self care. (She presented that day with her left eye almost swollen shut.) Otis failed to attend mental-health visits consistent with her mental-health needs. Otis failed to attend drug rehabilitation. The trial court found that Otis "is not minimally fit and appropriate to parent her child" and that she would not, with even five more years of services, be able to reunify with CO. The trial court found that it was in CO's best interest to terminate her parental rights, having given consideration to the likelihood that the child would be adopted and the potential harm to CO if returned to her custody. The trial court found specifically that CO would be subjected to the risk of exposure to drugs and the risk associated with having a mother with significant mental-health and drug issues. The termination order was filed of record in June 2017, and Otis timely appealed from that order.
Otis asserts on appeal that the overall finding that it was in CO's best interest to terminate her parental rights is clearly erroneous. She does not contest the finding of statutory grounds. Otis argues in particular that the trial court erred because (1) she should have been given more than ten months in which to have a meaningful chance to reunify with CO; (2) the parental rights of Christopher Otis, Sr., were not terminated in these proceedings and he remained the legal father of CO, so the child was not actually being cleared for permanent placement; and (3) DHS failed to explore relative placement with CO's cousin, grandmother, or other relatives. None of Otis's arguments are persuasive. We hold that the trial court's finding that it was in the child's best interest to terminate Otis's parental rights is not clearly erroneous.
First, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. Dozier v. Ark. Dep't of Human Servs. , 2010 Ark. App. 17, 372 S.W.3d 849. Here, the trial court found aggravated circumstances such that there was little likelihood that further services would result in Otis successfully reunifying with CO. In fact, the trial court remarked that even five more years of services would not likely result in a successful reunification. In short, Otis was mentally ill and a drug user, neither of which she adequately addressed despite referrals for such services by DHS. See Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, 489 S.W.3d 182.
Second, Otis argues that the legal father was dismissed from these proceedings, which "calls into question the ability of [DHS] to clear CO for permanency through adoption." This, she argues, renders it against CO's best interest to terminate Otis's parental rights. We disagree. Arkansas Code Annotated section 9-27-303(40) defines "parent" to include the man to whom the biological mother was married at the time of the child's conception or birth. Mr. Otis remained CO's legal father, but Mr. Otis did not appeal the termination order that dismissed him as a party, and Otis concedes that she has no standing to assert any potential right that *876 Mr. Otis may possess. Importantly here, Arkansas Code Annotated section 9-27-341(a)(1)(B)(2) provides that termination of parental rights is to be used "only in cases in which the department is attempting to clear a juvenile for permanent placement." (Emphasis added.) The statute does not require that termination of parental rights be a predicate to permanent placement, but only that DHS be attempting to clear the juvenile for permanent placement when parental rights are terminated, which was the case here. See M.T. v. Ark. Dep't of Human Servs. , 58 Ark. App. 302, 307, 952 S.W.2d 177, 179 (1997). Even though CO was not yet cleared for permanent placement, the trial court did not clearly err in finding that termination of his mother's parental rights remained in his best interest.
Addressing Otis's third argument, we hold that the lack of exploration of placing CO with a relative before termination does not render the trial court's overall best-interest finding clearly erroneous. Indeed, a trial court is permitted to set termination as the goal even when a relative is available and requests custody because the Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the juvenile is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest. See Elliott v. Ark. Dep't of Human Servs. , 2017 Ark. App. 672, 536 S.W.3d 642 ; Helvey v. Ark. Dep't of Human Servs. , 2016 Ark. App. 418, 501 S.W.3d 398. Here, CO was not being cared for by a relative at the time of the termination hearing. See Scrivner v. Ark. Dep't of Human Servs. , 2016 Ark. App. 316, 497 S.W.3d 206. The grandmother did not appear or testify at the termination hearing. Rese (the cousin) did testify, but her testimony reflected that Otis did not, at least initially, want Rese to be considered a placement or to be permitted visitation. Moreover, Otis's attorney never argued to the trial court that termination was not proper because there was a potential relative placement for CO. The attorney's argument focused only on the request for more time for Otis to rehabilitate her situation.
In summary, after our de novo review, we are not left with a definite and firm conviction that the trial court clearly erred in finding it to be in CO's best interest that Otis's parental rights be terminated. The order terminating Otis's parental rights to CO is therefore affirmed.
Affirmed.
Abramson, J., agrees.
Gruber, C.J., concurs.

No legal or biological father is part of this appeal.

Otis had tested positive for benzodiazepines, opiates, PCP, and cocaine.